IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLE RICHARD LUSBY,

        Petitioner,

  v.

RICK ANGELOZZI,

        Respondent.

Case No. 1:12-01760-HU

FINDINGS AND RECOMMENDATION

NOEL GREFENSON
Attorney at Law
1415 Liberty Street, South
Salem, Oregon 97302

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
ANDREW HALLMAN
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent

HUBEL, Magistrate Judge

1 -- FINDINGS AND RECOMMENDATION

Petitioner brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. Petitioner alleges that his guilty plea to attempted rape was not knowing, intelligent, and voluntary because trial counsel failed to obtain, and the prosecution failed to disclose, two sheriff deputy reports. For the reasons set forth below, the habeas petition (#2) should be denied.

## BACKGROUND

The events leading up to petitioner's conviction began with a Linn County runaway investigation concerning sixteen-year-old Alexis W. That investigation lead to sex offense investigations in Linn and Klamath Counties, and ultimately to petitioner's arrest in Klamath County.

### I.  Linn County Runaway Investigation (Case No. 08-19600F)

On November 30, 2008, Lea W. contacted the Linn County Sheriff's Office to report that her sixteen-year-old daughter Alexis had run away from home. Lea W. was concerned that Alexis was with petitioner (age twenty three) in Klamath Falls. Resp. Exh. 154 at 29.

On December 5, 2008, Linn County Sheriff Deputy J. Raymond interviewed Lea W. and her daughter Kayla N. (also age sixteen). Deputy Raymond wrote two reports concerning this interview. A six-page report was filed in the runaway investigation. Id. at 37-42. *The report was not disclosed to petitioner's defense counsel during*

*the course of the sex offense prosecution.* Pet.'s Reply (#26) at 11 & 13.

According to the report, Kayla stated that she had sex with petitioner at least five times, every time she was with petitioner they would drink, and petitioner used alcohol to cloud her judgment:

> Kayla told me she had her first sexual encounter with Cole in July of 2008. In early August, Cole started trying to convince her to move in with them. *Kayla said every time she met with Cole and Jennifer [Cole's 16-year-old finance] they would drink.* Cole would supply the alcohol and encourage them to drink. After they were highly intoxicated Cole would have sex with both of them at the same time. *Kayla said this occurred at least 5 separate times over the summer of 2008.* * * *
>
> * * * * *
>
> Kayla told me she never felt she was doing the right thing when she was with Cole. *Kayla said he used the alcohol to cloud her judgment.* Cole bought and paid for Kayla's trips to visit. Kayla told me Cole knew she felt guilty getting things for free. He would use this as a reason for her to have sex with him. *Kayla said Cole would talk about sex while they drank but he always waited until she was drunk to try anything.*

Resp. Exh. 154 at 38 (emphasis added).

Concerned that Alexis was in danger, Deputy Raymond contacted Detective Sergeant Monty Holloway in the Klamath County Sheriff's Office. Id. at 41-42. On the evening of December 5, 2008, Holloway took a team of officers to Wiseman's Trailer Park, and found Alexis naked inside petitioner's travel trailer. Id. at 42

3 -- FINDINGS AND RECOMMENDATION

& Resp. Exh. 112 at 8. Petitioner managed to escape, but was apprehended two days later.

## II. Linn County Sex Offense Investigation (#08-19868)

Deputy Raymond wrote a second report summarizing his December 5, 2008 interview of Kayla, which was filed in the Sex Offense Investigation, Case No. 08-19868. *This report was disclosed to petitioner's defense counsel.* Pet.'s Reply (#26) at 13 & Resp. Exh. 114 at 60-62. In the report, Deputy Raymond recounts Kayla's statements, including that she was always intoxicated when she had sex with petitioner, and that on one occasion she was so intoxicated that she blacked out:

> In late August of 2008 Kayla and Alexis went to Klamath Falls. They stayed with Cole and Jennifer * * * * She thought it was over a three day period. Kayla told me Cole once again supplied them with alcohol.
>
> Kayla told me she drank to the point it was difficult for her to walk. She remembered being asked into the bedroom and laying on the bed. Kayla said she was able to remember some of the intercourse but *she blacked out for short periods throughout the event. Kayla told me she was intoxicated each time she engaged in having sex with Cole and Jennifer. Kayla said she had sex with Cole five different times at his house over this past summer.* Kayla's mom was present during the interview and Kayla was not comfortable giving me details about the sex. She did tell me Cole inserted his penis in her vagina every time they had sex.

Resp. Exh. 111 at 4-5 (emphasis added).

On December 9, 2008, Deputies Raymond and Steve Looney interviewed both Kayla and Alexis at the ABC House, a child abuse intervention center. Detective Looney wrote a report concerning

4 -- FINDINGS AND RECOMMENDATION

this interview. *This report was not disclosed to defense counsel.* Pet.'s Reply at 13-14; Resp. Exh. 137 at 36. The report indicates that Kayla could recall two occasions when she had sex with petitioner when she was sober:

> * * * I told her that it sounds like she was intoxicated or they both were intoxicated or had been drinking when most of the incidents occurred. I asked if there was ever a time when she was not intoxicated and they had sex or something physical happened between them. Kayla said she thinks there was only one time she wasn't drunk when this happened. She said that Cole had a very long paper route. *[O]n one of the nights . . . Cole decided he wasn't going to go and let his girlfriend do the route instead. * * * She said she fell asleep on the couch and woke up with him kissing . . . her. She said she didn't really want to go along with it, but she didn't really want to say no to him. * * * Kayla said that was the only time she could remember that she was sober. All the other times, she was really intoxicated when that happened.*
>
> \* \* \* \* \*
>
> * * * I then asked if she can think of anything else in regards to Cole that * * * she hasn't talked about or that she thinks that I should know. Kayla said she actually remembers one other time when something happened between her and Cole.
>
> * * * *She said it happened one time when it was just her and Cole on the paper route. * * * Kayla said she didn't really want to try to fight him off because they were out in the middle of nowhere. * * * She said they ended up having sex and that they were not intoxicated.*
>
> \* \* \* \* \*
>
> * * * I asked her again how many total times she had sex with Cole while she was in Klamath Falls with her sister for that week or so visit. Kayla said it would then make it about six times that she could remember. She said there were *two times she can remember when she*

5 -- FINDINGS AND RECOMMENDATION

> *was sober and she said she was intoxicated during the rest.*

Resp. Exh. 154 at 21-25 (emphasis added).

### III. **Klamath County Investigation (#08003664)**

On December 12, 2008, Klamath County Detective Sergeant Monty Holloway issued a report summarizing his interview of petitioner and Deputy Raymond's prior interview of Kayla. *Detective Holloway's report was disclosed to petitioner's defense counsel.* Resp. Exh. 114 at 7-15. Deputy Holloway's report includes Kayla's statements that she blacked out once, and that she was intoxicated every time she had sexual intercourse with petitioner:

> Kayla also told Deputy RAYMOND that in August of 2008 she and Alexis went to Klamath Falls, Oregon and stayed with Cole and Jennifer * * * for about 3 days. Kayla again stated that Cole provided her alcohol, to the point that she had trouble walking, and had sexual intercourse with Cole, but does not remember all of the details because she blacked out. Kayla also stated that she was intoxicated each time she had sex with Cole and Jennifer, and she had sex with Cole at least five times at his house * * * *

Resp. Exh. 112 at 7.

Petitioner told Detective Holloway that he knew Kayla was sixteen, that he had sex with her approximately five to ten times in Klamath Falls, and that Kayla was intoxicated maybe once when they had sex (but not in Klamath County). Id. at 11-12. Additionally, petitioner explained that he had researched the issue and knew that having sex with a sixteen year-old in Oregon was only a misdemeanor. Resp. Exh. 114 at 23.

6 -- FINDINGS AND RECOMMENDATION

On December 15, 2008, petitioner was charged with Rape in the First Degree (2 counts), Burlgary in the First Degree, Custodial Interference in the First Degree (2 counts), Custodial Interference in the Second Degree, Online Sexual Corruption of a Child in the First Degree, Sexual Abuse in the Third Degree (2 counts), Resisting Arrest, and Escape in the Third Degree. Resp. Exh. 102.

The rape charges were premised upon the allegation that petitioner engaged in sexual intercourse with Kayla when she was intoxicated to the point that she was mentally or physically incapable of consent. Resp. Exhs. 137 at 9-14; & 135 at 14 & 35-36. Both rape charges carried a Measure 11 mandatory minimum sentence of 100 months. O.R.S. 137.700(2)(a)(J). Petitioner's defense to the rape charges was that (1) Kayla's alcohol consumption was voluntary; (2) the sexual intercourse was consensual; (3) Kayla never blacked out during sex; and (4) she and petitioner had consensual intercourse on multiple occasions when she was not drunk. Resp. Exhs. 123 at 3; 128 at 8, 16 & 32; 135 at 14 & 21-22. On August 7, 2009, the trial court judge issued a letter ruling that petitioner would be permitted to make an offer of proof that petitioner and Kayla had consensual intercourse on four prior occasions in order to show Kayla's motive or bias in accusing petitioner of rape. Pet.'s Exh. 8.

///

///

7 -- FINDINGS AND RECOMMENDATION

However, on August 13, 2009, petitioner pled guilty to *Attempted* Rape in the First Degree, Custodial Interference in the First Degree, Online Sexual Corruption of a Child in the First Degree, Sexual Abuse in the Third Degree (2 counts), and Escape in the Third Degree. Resp. Exhs. 103 & 104. Despite petitioner's knowledge that some of the investigative reports had not been produced (see Resp. Exh. 132, Att. A), petitioner testified at the plea hearing that he was satisfied with defense counsel's representation and that there was nothing counsel "might have done or should have done . . . to help and assist [him]." Resp. Exh. 104 at 8-9. When summarizing the State's evidence at the plea hearing, the prosecutor explained that petitioner did in fact have sex with Kayla, and the only question for a jury would have been the issue of "voluntary intoxication," given the fact that they had engaged in consensual intercourse over a period of time. Id. at 10.

Pursuant to the negotiated plea agreement, petitioner was sentenced to a term of probation and 180-days jail time (with credit for time served). Resp. Exhs. 101 & 104 at 10-11. Petitioner was immediately released from custody. Shortly thereafter, petitioner violated probation and the court imposed a 44-month term of incarceration. Resp. Exhs. 101, 129 & 131.

///

///

8 -- FINDINGS AND RECOMMENDATION

## IV. State Post-Conviction Proceeding

After the revocation of petitioner's probation, he sought state post-conviction relief challenging his original conviction on the basis that he received ineffective assistance of counsel and the prosecutor failed to disclose exculpatory evidence. The post-conviction court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.[1]  Lusby v. Nooth, 250 Or. App. 396, 282 P.3d 30, rev. denied, 352 Or. 377 (2012).

## DISCUSSION

Petitioner contends that the post-conviction court's rejection of his ineffective assistance and Brady claims was based on an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(2).  Pet.'s Reply at 8 & 12. On habeas review, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be

---

[1] Respondent's assertion that petitioner's Brady claim is procedurally defaulted because it should have been raised on direct appeal lacks merit.  See State v. Koennecke, 274 Or. 169, 179, 545 P.2d 127 (1976) (Brady claim may be raised by accused in post-conviction proceedings).  In any event, this court may deny a claim that has not been exhausted on the merits.  28 U.S.C. § 2243(b)(2).

9 -- FINDINGS AND RECOMMENDATION

overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Id. (citing 28 U.S.C. § 2254(d)(2)); Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012), cert. denied, 133 S.Ct. 1262 (2013).

I.   **Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987). In the guilty plea context, the prejudice prong requires a petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012).

When the alleged error is a failure to investigate, the resolution of the prejudice inquiry "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill, 474 U.S. at 59; Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir. 2004). "This assessment, in turn, will depend in large part on a prediction whether the

10 -- FINDINGS AND RECOMMENDATION

evidence likely would have changed the outcome of a trial." Hill, 474 U.S. at 59: Lambert, 393 F.3d at 982. This prediction is made objectively, "without regard for the 'idiosyncrasies of the particular decisionmaker.'" Hill, 474 U.S. at 60 (quoting Strickland, 466 U.S. at 695).

A habeas court may first address the prejudice prong under Strickland, without considering whether counsel's conduct was deficient. Crittenden v. Ayers, 624 F.3d 943, 960 (9th Cir. 2010); Villafuerte v. Stewart, 111 F.3d 616, 630 (9th Cir. 1997). Consequently, "[c]ourts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial." Lambert, 393 F.3d at 982-83.

After his arrest, petitioner began writing defense counsel about his desire to negotiate a plea, and outlining the weakness in some of the charges against him. Resp. Exh. 128. Petitioner's letters reflect a sophisticated understanding of the charges, and his unwavering desire to obtain a suspended sentence so that he would be released from custody before his mother died.

At the state post-conviction proceeding, petitioner testified that although he originally was eager to negotiate a plea deal to obtain his immediate release, his "focus changed completely" after

11 -- FINDINGS AND RECOMMENDATION

his mother died in March. Resp. Exh. 139 at 15-16. According to petitioner, at that point he wasn't willing to take any deal that required a guilty plea to KN's allegation that she had blacked out while having sexual intercourse with petitioner. <u>Id.</u> at 21. Petitioner testified that had he received the missing reports, he would not have pled guilty to rape, or the lesser included offense of attempted rape:

> Q. And can you give us an opinion on whether these reports were, would have been significant to you with respect to your decision to accept this plea offer?
>
> A. Oh, they definitely would have.
>
> Q. And how?
>
> A. Well, because they confirm what I was saying all along, that Kayla wasn't being honest about our relationship and about the presence of alcohol during that relationship. You know, her story is significantly different in the second reports.
>
>    And most importantly to me, she no longer claims to have been blacked out, which was the entire basis for the State's, for that, the State's case on that charge. Um, I mean, this is exactly the kind of evidence that I was looking for, um, and was told didn't exist.
>
>    I could have obviously impeached her blackout allegation, corroborated my own side of the story. I mean, with these reports I never would have pled guilty to Count 2 or even an attempt of that count.
>
> Q. So, and that is in fact what ended up happening? You pled guilty to a lesser-included offense of Count 2?
>
> A. Correct.

12 -- FINDINGS AND RECOMMENDATION

>    Q.   And why did you do that?
>
>    A.   Well, it seemed like the only realistic option at that point. I mean, my lawyer was telling me that I didn't have anything to defend myself with, so it, it, it seemed like it was a, it seemed like a logical choice based on what we had. But if I had had these reports, I never would have pled to the lesser-included offense either.

Id. at 28-29.

Additionally, defense counsel testified that Kayla's undisclosed statement in the report that she had sex with petitioner when she was not intoxicated was significant. Resp. Exh. 135 at 40. Counsel opined that "at the very least it would have affect the course of the negotiations," and could have potentially affected whether petitioner went to trial. Id. at 42.

The post-conviction court concluded that petitioner's testimony was not credible:

>    Petitioner claims he would not have pled if [he] had additional reports/info. [Court] does not believe he would have risked [Measure 11] time when there was a PROBATION offer. Petitioner went to [sic] far as to write DA personally to make his own offer. Clear from [petitioner's] letters to [attorney] that [petitioner] was making many strategy decisions. DA did not have missing reports but would have gotten them if case hadn't negotiated. Those reports not exculpatory, but merely grounds for some [cross examination]. Plea knowing and voluntary. No inadequacy, no prejudice. [Petitioner] knew elements of each charge. Motion to withdraw plea heard on these same grounds & denied. Failure of proof on all remaining claims.

Resp. Exh. 140.

13 -- FINDINGS AND RECOMMENDATION

I defer to the post-conviction court's credibility finding because petitioner has not presented clear and convincing evidence to rebut that determination. Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012), cert. denied, 133 S.Ct. 863 (2013); Lambert, 393 F.3d at 972. Moreover, the reasonableness of the post-conviction court's credibility finding is supported by trial counsel's attestation that although petitioner understood the weakness of some elements of the charges, he "wanted to take advantage of the plea deal that would immediately release him from jail with only probation." Resp. Exh. 132 at 2. Petitioner's continued interest in a plea deal, after his mother's death, is reflected in a July, 2009 letter to defense counsel wherein petitioner states:

> As of 07/14/09, I will have 11 months "time served." As such, I'll accept practically any reasonable offer that includes 1 year in jail and a suspended prison sentence.

Id., Att. B at 2.

Moreover, while Kayla's statements summarized in the undisclosed reports may have had impeachment value, they were not exculpatory. The absence of a reference to blacking out in the undisclosed reports, and Kayla's recollection of two instances in which she had sexual intercourse with petitioner when sober, do not amount to a recantation. Nor are the summaries of Kayla's statements contained in the reports inconsistent with a finding that on at least one occasion, petitioner had sex with Kayla when she was so intoxicated that she was incapable of giving consent.

14 -- FINDINGS AND RECOMMENDATION

In light of petitioner's failure to rebut the post-conviction court's factual finding that he was not credible (with clear and convincing evidence), and because the undisclosed reports contained, at best, impeachment evidence, there is no reasonable probability that, but for trial counsel's failure to obtain the reports, petitioner would have insisted on going to trial on two Measure 11 rape charges rather than accept a long-sought plea offer resulting in his immediate release from custody. Similarly, petitioner has failed to demonstrate a reasonable probability that disclosure of the reports would have led counsel to change his recommendation as to the plea. Trial counsel's testimony in his post-conviction deposition that the undisclosed reports were *significant* and would have been *relevant* to plea negotiations does not render the post-conviction court's rejection of this claim contrary to, or an unreasonable application of clearly established Federal law.

In sum, the state post-conviction court's rejection of petitioner's ineffective assistance of counsel claim is not based upon an unreasonable determination of the facts in light of the evidence presented, nor is it contrary to, or an unreasonable application of clearly established federal law. Hence, habeas relief should be denied. See 28 U.S.C. § 2254(d)(1) & (2).

///

///

15 -- FINDINGS AND RECOMMENDATION

## II. Brady Violation

Pursuant to the Supreme Court's holding in Brady v. Maryland, 373 U.S. 83, 87 (1963), prosecutors are constitutionally obligated to disclose evidence favorable to an accused that is material either to guilt or to punishment. Kyles v. Whitley, 514 U.S. 419, 432 (1995); Jones v. Ryan, 733 F.3d 825, 837 (9th Cir.), cert. denied, 134 S.Ct. 503 (2013).

In order to succeed on a Brady claim, petitioner must demonstrate that (1) the evidence is favorable, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) the evidence is material to his guilt or innocence. United States v. Sedaghaty, 728 F.3d 885, 899 (9th Cir. 2013); United States v. Kohring, 637 F.3d 895, 901-02 (9th Cir. 2011).

The test for materiality in the guilty plea context is an objective one: "[W]hether there is a reasonable probability that but for the failure to disclose the Brady material, the defendant would have refused to plead and would have gone to trial." Sanchez v. United States, 50 F.3d 1448, 1454 (9th Cir. 1995); Smith v. Baldwin, 510 F.3d 1127, 1148 (9th Cir. 2007).  This, in turn, requires the court to consider the likely persuasiveness of the withheld information.  Sanchez, 50 F.3d at 1454.[2]

---

[2] For purposes of this decision, I assume that Brady applies
(continued...)

For the reasons set forth above, petitioner has failed to demonstrate that there is a reasonable probability that, but for the prosecution's failure to disclose the Linn County reports, he would have refused to plead guilty and would have insisted on going to trial. Accordingly, the post-conviction court's rejection of this claim is not based upon an unreasonable determination of the facts, nor is it contrary to, or an unreasonable application of, clearly established Federal law.  28 U.S.C. § 2254(d)(1) & (2). Habeas relief is not warranted.

## CONCLUSION

Based on the foregoing, petitioner's petition for writ of habeas corpus (#2) should be DENIED.  A certificate of appealability also should be DENIED on the basis that petitioner has failed to make a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due May 27, 2014.  If no objections

---

[2](...continued)
in the guilty plea context and extends to impeachment evidence. See Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995) (applying Brady in guilty plea context); Smith v. Baldwin, 510 F.3d 1127, 1148 (9th Cir. 2007) (same); but see United States v. Ruiz, 536 U.S. 622, 633 (2002) (Constitution does not require government to disclose material *impeachment* evidence prior to entering into a plea agreement in which the defendant waives the right to receive such evidence).

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due June 13, 2014. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th day of May, 2014.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

18 -- FINDINGS AND RECOMMENDATION